## WILSON & CO. v. DEAN.

1. During the reading of a commission it was discovered that the cross interrogatories had not been propounded, whereupon, on objection made by defendant and sustained, the Circuit judge, on plaintiff's motion, withdrew the case from the jury and ordered a continuance. *Held,* that such order was within the judge's discretion, and that his discretion was properly exercised.

2. An assignment of a note carries with it all the securities which the assignor holds for its payment.

3. Defendant agreed to sell fertilizers for plaintiffs on a credit, guaranteeing the securities to the extent of his commissions, and afterwards collected in part these securities. *Held,* that the agreement was not strictly a guaranty, and that plaintiffs' action on this agreement should be regarded as an action for money had and received, in which they would be entitled to recover all moneys received by the defendant until fully paid the amount due to them from these securities.

4. If an action on a guaranty, the plaintiffs might be required to show that they had used due diligence to collect the notes, before resort could be had to the guarantor; but however regarded, the fault and *laches* of plaintiffs in returning the notes to defendant for collection were pertinent to the issue, and, if sustained, a good defence; and there being some evidence upon these matters, they should have been submitted to the jury.

Before HUDSON, J., Spartanburg, October, 1883.

This was an action by R. T. Wilson & Co. against Alvin H. Dean, commenced September 2, 1880. The opinion fully states the case.

*Mr. J. S. R. Thomson,* for appellant.

After the jury is charged, a case cannot be withdrawn, but plaintiff may take a non-suit. Defendant was not liable as guarantor of the uncollected notes. 2 *Dan. Neg. Inst.,* § 1753; 17 *S. C.,* 4; *Abb. Tr. Evid.,* 474; 1 *Wait's Act. & Def.,* 584; 3 *McCord,* 236; 2 *Pars. Bills & N.,* 140; *Brandt Sur.,* §§ 83, 84; 1 *Hill,* 59. The note and guaranty are separable, and the promise to guarantee did not amount to a guaranty that could be sued upon, but if it did, the guaranty did not necessarily pass under

the assignment. 22 *Barb.*, 516; 26 *Wend.*, 425. The liability of the plaintiffs for not forwarding the notes for collection in proper time was a proper defence, and the judge should have allowed the jury to consider the same in making up their verdict. 2 *Dan. Neg. Inst.*, §1753. Under his contract, defendant could not be held liable to pay plaintiffs more money or cotton than he actually received on the notes put in his hands for collection. All of these matters his honor took away from the jury.

*Mr. M. F. Ansel*, contra.

The matter complained of in the first and second exception was within the discretion of the Circuit judge. The guaranty passed with the assignment of the notes. 10 *Rich. Eq.*, 585; 5 *S. C.*, 346; 14 *S. C.*, 66, 142. Defendant, as agent of plaintiffs, was bound to exercise good faith in taking the notes, and to collect all that was possible. Plaintiffs had nothing to do with them after they were turned over to defendant.

June 27, 1884. The opinion of the court was delivered by

MR. JUSTICE McIVER. The defendant was appointed by the Atlantic and Virginia Fertilizer Company their agent for the sale of fertilizers at Vernonsville, South Carolina. The terms of the agreement, under which he was so acting, are to be gathered from a letter of the company to the defendant, setting forth the terms proposed, and his reply thereto, agreeing to such terms, with a modification therein stated. According to these terms, the defendant was to sell the fertilizers furnished him by the company on a commission of $6 per ton, he guaranteeing the notes taken therefor to the extent of his commissions only, after allowing certain specified expenses, which notes were to be turned over to the company. In pursuance of this agreement seventy-six tons of fertilizers were sent to the defendant by the company, amounting, at the price at which the article was to be sold, to the sum of $5,320, and the defendant forwarded to the company notes to the amount of $5,120.12, which were received by them.

This agreement seems to have been entered into on February 26, 1877, but at what time the notes were forwarded to the company does not appear, though it must have been some time prior to

November 9, 1877, for on that day the plaintiffs, to whom the company had previously transferred the notes, took from the defendant a receipt in the following words: "Received by express from R. T. Wilson & Co., of New York, for collection, sundry notes, bonds, liens, and accounts, amounting in the aggregate to fifty-one hundred and twenty 12–100 dollars, and we agree to act as agents and trustees for the said R. T. Wilson & Co., in collecting the same, and bind ourselves to send forward to the said R. T. Wilson & Co., at ·New York, all cotton and money received in settlement of the same, as fast as the same comes into our possession, without retaining any portion for our commissions and services until they are fully paid off."

This action was commenced on September 2, 1880, to recover an alleged balance due on the notes thus entrusted to defendant for collection. During the progress of the trial the testimony of a witness for the plaintiffs, which had been taken by commission, was being read, when it was discovered that the commissioners had failed to propound the cross interrogatories to the witness, whereupon the defendant objected to the commission, which objection was sustained. The plaintiffs then moved to withdraw the case from the jury and continue the case, which motion was granted and the defendant excepted. The defendant then agreed that, subject to his exception, the testimony by commission might be received, and the trial proceed.

The plaintiffs offered testimony showing the amount of fertilizers delivered to the defendant for sale, and that in November, 1879, a partial settlement was made with the defendant by plaintiffs' agent, in which, after allowing him credit for the cotton delivered, and certain expenses, together with his commissions and the amount of uncollected notes then estimated to be on hand, left the defendant indebted to the plaintiffs in the sum of $469.-85, which subsequently he paid before this action was commenced. The plaintiffs then closed, and the defendant made a motion for a non-suit, on the ground that plaintiffs had proved no cause of action against the defendant, which motion was refused.

The testimony on the part of the defendant was to the effect that in June or July, 1879, he had a settlement in full of his

guano transactions with the plaintiffs, who took the notes on hand,
but subsequently returned them to defendant, begging him to
collect them if possible; that defendant could not collect them
because they were sent to him too late in the season; that the
notes on hand, uncollected (which were produced at the trial),
amounted to $741.40, upon which assignments to the plaintiffs
by the Atlantic and Virginia Fertilizer Company were indorsed;
that none of said notes have any guaranty of defendant indorsed
upon them; that defendant had paid out for plaintiffs sundry ex-
penses specified; that "all money or cotton received have been
turned over to principals;" that defendant never guaranteed the
notes; that at the the time of the partial settlement made with
plaintiffs' agent, defendant did not have with him the uncollected
notes, and the amount ($623.60) then set down as the amount of
the uncollected notes was only an estimate, the correct amount,
as shown by the notes produced at the trial, being, as stated
above, $741.40; that defendant had written to the attorney for
the plaintiffs, asking whether the notes should be put in suit,
who replied that he would let him know, but never did so, and
that the notes were never sued. In addition to this testimony
from the defendant himself he also offered the evidence of another
witness to the effect that the notes could have been collected, if
they had been on hand early in the season.

"The defendant requested his honor to charge that if through
the fault of the plaintiffs, and without fault of the defendant, the
$741.40 of notes on hand were not collected, then Dean's rights
are the same as though the notes were collected, and the money
in plaintiffs' hands. His honor said that if the facts warranted it,
this proposition of law was correct, but it was difficult to apply
such proposition to the testimony in this case, and charged that the
liability of the plaintiffs for not forwarding the notes for collec-
tion in proper time could not come in in this action. He charged
that if the notes were transferred by the Atlantic and Virginia
Fertilizer Company, the guarantee of the notes by Dean followed
such transfer; that if the transfer was made, and the defendant
had not paid to the plaintiffs, or their assignor, the amount of
the notes taken by him, to the amount of his commissions ($456),
then the jury might find a verdict for the plaintiffs for $456;

that if there was a settlement with A. H. Dean and plaintiffs at the time when Mr. Ansel was present, and the amount between them was settled, except the $623 of notes still on hand, and Dean failed to collect and return said notes then, under his guarantee, Dean is now responsible to the plaintiffs for $456, the amount of his commissions."

The jury returned a verdict in favor of the plaintiffs for $456, and the defendant moved for a new trial upon the ground that the verdict was excessive, and was contrary to the testimony and the charge of the presiding judge. The motion was refused, and judgment being entered on the verdict, defendant appeals, alleging that the Circuit judge erred in the following particulars: "1. In allowing the plaintiffs the right to withdraw the case from the jury after they were charged with the case. 2. In not granting a non-suit herein. 3. In charging that if the notes were transferred by the Atlantic and Virginia Fertilizer company, then the guarantee of the notes by Dean followed the transfer. 4. In charging that if such transfer was made, and the defendant had not paid to the plaintiffs, or their assignor, the amount of the notes taken by him to the amount of his commissions ($456), then the jury might find a verdict for the plaintiffs for $456. 5. In charging that if there was a settlement with A. H. Dean and plaintiffs at the time when Mr. Ansel was present, and the amount between them was settled, except the $623 of notes still on hand, and Dean failed to collect and return said notes, then, under his guarantee, Dean is now responsible to the plaintiffs for $456, the amount of his commissions. 6. In ruling that the defendant's request to charge was not applicable to the testimony in this case. 7. In charging that the liability of the plaintiffs for not forwarding the notes for collection in proper time could not come in in this action. 8. In refusing to charge that if, through fault of the plaintiffs, and without fault of the defendant, the $741 of notes on hand were not collected, then Dean's rights are the same as though the notes were collected and the money in plaintiffs' hands. 9. In refusing a new trial."

The first ground of appeal presents a question of practice which we think is conclusively settled adversely to the appellant by the case of *Cook* v. *Cottrell*, 4 *Strob.*, 61. In that case the

action was on a foreign judgment, and after the trial had been commenced it was discovered that there was a defect in the judge's certificate authenticating the record, whereupon the plaintiff moved a continuance of the case in order that the certificate might be amended, which motion was granted, notwithstanding the defendant insisted upon his right to a non-suit. On appeal the court held that this was a matter within the discretion of the Circuit Court, saying, amongst other things, that "without a discretion over the whole subject, to be carefully exercised by the court, trials might be made the means of defeating justice instead of dispensing it, and the court itself become an instrument to entrap the unwary or reward the contrivances of the dishonest. It must be supposed that discretion was properly exercised on the circuit; the circumstances which have been dwelt on here show no reason for controlling it." The appeal was therefore dismissed. The present case is much stronger than the one cited. There the defect complained of might have been discovered before the trial, while here it could not have been, as no one had a right to open the commission until it was published by the order of the court, and there was no reason to suppose that the commissioners had neglected to perform their duty. It is quite clear that the whole matter was within the discretion of the Circuit judge, and it is equally clear that his discretion was properly exercised.

The second, third, fourth, and fifth grounds of appeal present substantially the same questions, and will be considered together. There is no doubt of the legal proposition that the assignment of a note or bond carries with it all the securities which the assignor holds for its payment. (See the cases cited by the counsel for the plaintiffs.) When, therefore, the notes in question were transferred to the plaintiffs by the Fertilizer Company, any security which it then held for the payment of such notes, enured to the benefit of the plaintiffs.

We think, however, that the true nature and effect of the agreement between the company and the defendant was not that the latter should, in the strict sense of the term, guarantee the payment of the notes. That was the proposition in the letter of the company to the defendant, but in his reply he modified that proposition in these words: "It is, however, understood that I

only guarantee to the extent of my commissions on all the sales I make. In other words, I am not to lose any more than my commissions on the sales for the season amount to." The real agreement, then, between the company and the defendant was that the latter was to sell the fertilizers furnished him by the former, on the terms agreed upon, collect the notes taken and forward proceeds to the company, retaining nothing for his commissions until the company had received the full amount of the sales, less the commisssons and certain specified expenses. This, too, is the proper construction and effect of the receipt given by defendant to the plaintiffs on November 9, 1877, set out above.

If, therefore, the defendant had failed to collect a single dollar on the notes, we do not see what cause of action the plaintiffs could have against him, unless, perhaps, they were able to show that the failure to collect was the result of the defendant's default; and the only penalty the defendant would incur would be the loss of his commissions. It seems to us, therefore, that it is a mistake to regard this as an action on the guaranty of defendant, but that it should rather be regarded as an actiou for money had and received by the defendant for the use of the plaintiffs. Under the view which we have taken of the effect of the agreement between the parties, the defendant had no right to retain a single dollar for his commissions until he had fully paid and satisfied the plaintiffs the amount due to them. Whatever amount he may thus have retained was not his money, but was the money of the plaintiffs, received by him to their use, and for that he would be liable.

The sixth, seventh, and eighth grounds of appeal, involving the same principles, will be considered together. If the action could be regarded as an action on defendant's guaranty of the notes, to the extent of the amount of his commissions, then it seems to us clear, under the legal principles regulating the law of guaranty, that the question whether the failure to collect the notes was the result of the fault or laches of the plaintiffs, was quite pertinent to the issue; in fact, if the action was based upon the guaranty, the plaintiffs might have been required to show, affirmatively, that they used due diligence to collect the notes before resort could be had to the guarantor. But even regarding the action as we do,

as not based upon the guaranty, as it is called, but as an action for money had and received, still the question whether the failure to collect the notes was due to the negligence of the plaintiffs in returning them to the defendant in time to enable him to collect them was an important one, and should have been left to the jury, as there was testimony on the part of the defendant tending to show that the notes could have been collected if they had been sent to the defendant earlier in the season.

The defendant had a pecuniary interest in collecting the whole amount of the notes, for upon his doing so depended his compensation. If, therefore, he was prevented from collecting the notes by the fault of the plaintiffs, and thereby lost his time and service, the extent to which he was thus a loser would certainly be good defence to the action of the plaintiffs for money received by him to their use. We think, therefore, that the Circuit judge erred in refusing to charge as requested, and instructing the jury that the question whether the plaintiffs were in fault in not forwarding the notes for collection in proper time could not be considered in this action.

The remaining ground of appeal has been so often ruled upon by this court that it requires no further notice.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.